# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | No. 12 CR 0478 |
| EDWARD WHITE, ) | Judge Joan H. Lefkow |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Edward White has been charged in a four-count indictment with being a felon in possession of a firearm, a felon in possession of ammunition, and possessing narcotics with the intent to distribute in violation of 18 U.S.C. §§ 922(g)(1) and 841(a)(1). The charges stem from a search conducted by Chicago police officers that uncovered a firearm and narcotics at White's residence. White moved for an evidentiary hearing to determine whether the complaining police officer's omission of information from the complaint in support of the search was material to the issuing judge's finding of probable cause supporting the warrant.[1] *See Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The court granted the motion and a hearing was held on May 10, 2013, at which Chicago Police Officer Michael O'Connor and Cook County Circuit Court Judge Gloria Chevere testified.

---

[1] Although White did not explicitly move to suppress the evidence, the court treats his motion for a *Franks* hearing (dkt. 47), already granted, as an implicit pending motion to suppress.

Based on the evidence received, the court makes the following findings of fact and reaches the conclusion that White has failed to meet his burden of proof to demonstrate that Officer O'Connor intentionally or recklessly omitted information from Judge Chevere.

# BACKGROUND[2]

## I. Doe's Arrest

On August 5, 2010, Chicago Police Officer Michael O'Connor and his partner, Officer Robert Gallas, arrested one "John Doe" (a name signifying an arrestee giving information who has not previously cooperated with the police) for unlawful use of a weapon and for being a felon in possession of a firearm. After the arrest, Officer O'Connor learned that Doe had a criminal record. In 1997, Doe was convicted of aggravated vehicular hijacking and sentenced to serve ten years in the Illinois Department of Corrections. In 2005 he was convicted of battery and received a sentence of probation. Between 2004 and 2010, Doe was arrested an additional twelve times for numerous offenses, including driving on a revoked license, criminal trespass to a vehicle, driving on a suspended license, disobeying traffic signals, not wearing a seatbelt, and resisting and obstructing a peace officer in making an arrest.

## II. Doe's Information Regarding White

After arresting him, Officer O'Connor asked Doe whether he had information about drugs or guns, advising Doe that he would convey the fact of Doe's cooperation to the State's Attorney, which could be a basis for leniency. Doe gave Officer O'Connor information that O'Connor included in a complaint to support an application for the search warrant, as follows:

---

[2] The facts in the Background section come from the testimony of Officer Michael O'Connor and Cook County Circuit Judge Gloria Chevere at the hearing; the warrant; the complaint for the search warrant; and the arrest report for the John Doe in this case.

I, PO Michael O'Connor #8342, am a police officer of the City of Chicago and have been for the past 5 years. I am currently assigned to the Area 1 Gang Enforcement Unit 311. During this time I have conducted numerous weapons investigations and made numerous weapon arrests. I, and a citizen of Chicago, whom I will refer to as J. Doe in this affidavit, state the following:

J. Doe has stated that while visiting White, Edward . . . at the residence of [XXXX] W. Columbus Ave observed White, Edward . . . in possession of (1) .45 caliber semi automatic handgun blue steel in color on multiple occasions within the last two months, the last time being within the last ten days. J. Doe further states that White, Edward . . . always goes to the walk in closet in the basement and retrieves the said handgun from the closet. J. Doe has been to residence at [XXXX] W. Columbus numerous times over the last (2) months at different times during the day and evening hours for recreational purposes and knows White, Edward . . . resides at [XXXX] W. Columbus Ave. due to the fact that every time J. Doe has been in the residence White, Edward . . . has been in the address and has seen articles of White, Edward personal belongings and clothing around the address located at [XXXX] W. Columbus. J. Doe further states that he gains access to the address located at [XXXX] W. Columbus Ave through the front entrance. J. Doe knocks on the front door and is allowed entry by White, Edward . . . J. Doe further states that White, Edward . . . told J. Doe that he keeps the gun for protection. J. Doe has seen White, Edward . . . load the handgun, has experience with weapons in the past, and knows that the weapon that White, Edward . . . had in his possession was a real handgun.

On 6 Aug 10, I, PO Michael O'Connor #8342 accompanied by J. Doe relocated to the address at [XXXX] W. Columbus Ave Chicago IL 60652 and J. Doe pointed out the residence where J. Doe observed White, Edward . . . in possession of the handgun. I, PO Michael O'Connor #8342 observed the residence located at [XXXX] W. Columbus Ave to have visible numbers [XXXX] affixed to the front and further pointed out the address as the residence of White, Edward . . . I, PO Michael O'Connor #8342 showed J. Doe a [CLEAR³] system photo . . . in which J. Doe identified White, Edward . . . as a male black 34 years of age, 5'10", 210 lbs, as the person J. Doe observed in the possession of the weapon. White, Edward . . . is a convicted felon with his most recent conviction being case #97CR0564801 for possession of a controlled substance.

Based on the information, the affiant believes that there are sufficient facts for the issuance of a search warrant for White, Edward . . . 34 years of age, 5'10", 210 lbs. and the residence located at [XXXX] W. Columbus Ave a single residence Chicago IL 60652.

---

³ The Chicago Police Department's CLEAR database is "a compilation of Chicago Police Department files." *United States* v. *Carter*, 573 F.3d 418, 421 (7th Cir. 2009).

Significantly here, the complaint did not reveal Doe's criminal history, that he was then under arrest, or that he was cooperating with law enforcement in providing the information recited in the complaint.

Officer O'Connor showed the complaint to Doe, who was still in custody, and Doe confirmed that the information was accurate. Officer O'Connor then faxed the complaint to an Assistant Cook County State's Attorney, who approved the complaint and faxed the document back with her signature. Officer O'Connor then placed Doe in a lockup overnight.

### III. The Appearance before Judge Chevere

About five hours later, on August 6, 2010 at approximately 9:00 a.m., Officers O'Connor and Gallas brought Doe with them to present the complaint to Cook County Circuit Judge Gloria Chevere. When they met with Judge Chevere, Officer O'Connor handed her the complaint, Doe's arrest report, a picture of the residence to be searched, and a picture of White.

Judge Chevere testified that she had no independent recollection of this particular complaint or of Doe. She testified that she had issued more than 1,000 search warrants and would have handled the warrant request in accordance with her customary practice. Judge Chevere's practice is first to determine whether the Cook County State's Attorney's Office felony review has approved the complaint because she relies on and gives deference to that office's determination that probable cause exists. That approval, Judge Chevere testified, is very important in her probable cause assessment. Judge Chevere next reviews the name and address associated with the target to ensure that she does not know anyone involved and confirms that the complaint consistently identifies the target and premises. She briefly peruses the documents, taking note of whether a John Doe complainant has any convictions and arrests. She does not,

4

however, check the nature of the offenses underlying those convictions or arrests. Judge Chevere explained that it is usually the case that a John Doe has a criminal record and is cooperating; thus, she assumes that the John Doe before her is an arrestee who hopes to curry favor with law enforcement.[4] Judge Chevere does not treat these factors, by themselves, as reasons to deny a warrant. After reviewing the documents, Judge Chevere places the John Doe under oath and asks for his real name. Judge Chevere observes Doe's demeanor to make sure that he is not intoxicated, asks the John Doe to confirm that the information is based on his personal knowledge, and cautions the John Doe that if the search warrant is approved a person's home may be searched resulting in criminal charges against that person. She then has the John Doe and the police officer sign the warrant application under oath.

Of the specific meeting with Judge Chevere, Officer O'Connor could only recall Judge Chevere's asking Doe for his name. He acknowledged that she may have asked him for additional information. Judge Chevere issued the search warrant. The following day, officers searched White's home and located a firearm in the basement closet.[5]

## LEGAL STANDARD

The Fourth Amendment requires that probable cause exist before a search warrant may issue. *United States* v. *McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (citing *Illinois* v. *Gates*,

---

[4] Judge Chevere distinguished between John Does and confidential informants. CIs are tested informants who do not need to appear before the issuing judge because they were already vetted. John Does are first time informants who appear before the issuing judge to support an application for a warrant.

[5] Nearly a year later, on July 9, 2011, Doe signed an affidavit stating that he had provided Officer O'Connor with false information about White and that the complaint in support of the search warrant was untruthful. On June 21, 2012, however, Doe appeared before a federal grand jury and recanted his recantation. This evidence is not relevant to White's *Franks* challenge. See Dkt. No. 56 at footnote 1.

5

462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)); *United States* v. *Harris*, 464 F.3d 733, 737–38 (7th Cir. 2006). An affidavit supporting a search warrant carries with it a presumption of validity. *See United States* v. *Norris*, 640 F.3d 295, 300 (7th Cir. 2011) (citing *Franks*, 438 U.S. at 171). To defeat the presumption, the defendant must prove by a preponderance of the evidence that (1) the officer intentionally or recklessly included false information or omitted information and (2) this information was material to finding probable cause. *See McMurtrey*, 704 F.3d at 508.[6] If the defendant meets his burden in establishing a Fourth Amendment violation, the evidence obtained in connection with executing the search warrant must be suppressed. *See Franks*, 438 U.S. at 156.

## ANALYSIS

I.  **Whether Officer O'Connor Intentionally or Recklessly Omitted Information in the Search Warrant**

A defendant basing a *Franks* challenge on omitted information must show that the omission was "designed to mislead or was made in reckless disregard of whether it would mislead." *McMurtrey*, 704 F.3d at 511 n.5 (citing *United States* v. *Tate*, 524 F.3d 449, 455 (4th Cir. 2008)); *see also United States* v. *Williams*, --- F.3d ----, 2013 WL 2149897, at *5 (7th Cir. May 20, 2013) ("[B]ecause officers must always make deliberate decisions about what to include in and omit from a warrant application, a *Franks* violation based on an omission requires a

---

[6] In its order granting White's motion for a *Franks* hearing, the court concluded that White made a substantial showing that Officer O'Connor recklessly omitted material information from the affidavit and that a hearing was necessary to determine whether information omitted from Officer O'Connor's affidavit in support of the search affected Judge Chevere's probable cause determination. This conclusion did not obviate White's burden at the hearing to demonstrate both that Officer O'Connor acted with the requisite culpability when omitting information and that this information was material. *See*, *e.g.*, *McMurtrey*, 704 F.3d at 509 ("[The substantial] showing does not necessarily entitle the defendant to favorable finding on the merits, but it entitles the defendant to a hearing where he must prove falsity or recklessness (as well as materiality) by a preponderance of the evidence.").

showing that the material information was omitted deliberately or recklessly *to mislead* the issuing magistrate."). Thus, White must show "direct evidence of [the officer's] state of mind or inferential evidence that [the officer] had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *United States* v. *McNeese*, 901 F.2d 585, 594 (7th Cir. 1990), *overruled on other grounds as recognized by United States* v. *Westmoreland*, 240 F.3d 618, 632–33 (7th Cir. 2001); *see United States* v. *Simmons*, 771 F. Supp. 2d 908, 917 (N.D. Ill. 2011) ("Recklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination.") (quoting *Riviera* v. *United States*, 928 F.2d 592, 604 (2d Cir. 1991)). A police officer acts with reckless disregard when he or she "entertained serious doubts as to the truth of [the] allegations." *United States* v. *Lowe*, 516 F.3d 580, 584 (7th Cir. 2008). A negligent omission does not satisfy this standard. *See United States* v. *Residence Located at 218 Third Street*, 805 F.3d 256, 258 (7th Cir. 1986).

      White argues that Officer O'Connor intended to mislead or at least recklessly disregarded the truth when he omitted information regarding Doe's criminal history, immediately recent arrest, and cooperation with law enforcement. As to criminal history, while best practices militate in favor of including this information in the affidavit, *see Williams*, 2013 WL 2149897, at *8 (citing *Simmons*, 771 F. Supp. 2d at 918–20), an inference of intention to mislead or even a reckless omission cannot be drawn from the omission in this instance because Officer O'Connor brought to Judge Chevere a file folder containing Doe's criminal history. That history detailed Doe's prior convictions and arrests, including the fact that Doe had been arrested the day before for being a felon in possession of a firearm.

7

Next, White argues that Officer O'Connor misled Judge Chevere about Doe's cooperation by referring to him as a "citizen of Chicago" instead of a cooperator. Nor did Officer O'Connor indicate that Doe had spent the previous night in jail and was still in police custody. Nonetheless, Officer O'Connor brought Doe before the judge, who had the opportunity to ask any questions she wished, a fact that militates against a finding that Officer O'Connor intended to mislead the judge or recklessly disregarded that this information would be important to her decision. *See, e.g.*, *United States* v. *Causey*, 9 F.3d 1341, 1343–44 (7th Cir. 1993) ("Not only did [the officer] co-sign the warrant complaint, but both he *and* the confidential informant appeared before the issuing judge. The judge's inquiry of the informant permitted him to assess the informant's credibility and allay concerns he might have had about the veracity of the informant's statements."). Officer O'Connor's seeking and obtaining the approval of an Assistant Cook County State's Attorney before seeking the warrant from Judge Chevere additionally belies the notion that he acted with the requisite culpability. *Cf. United States* v. *Perry*, 531 F.3d 662, 666 n.6 (8th Cir. 2008) ("Another factor that adds to the reasonableness of [the police officer's] belief that the affidavit was not so lacking in probable cause was the county prosecutor's determination that the affidavit provided probable cause for the search.").

Moreover, the facts of the present case are distinguishable from *United States* v. *Simmons*, where the court found that a police officer acted with reckless disregard in omitting information about a confidential informant's criminal history and cooperation. 771 F. Supp. 2d at 920.[7] In *Simmons*, the police officer arrested an individual who agreed to provide information

---

[7] In addition, the Seventh Circuit decided *McMurtrey* after the *Simmons* decision and noted that in cases dealing with *Franks* violations resulting from omissions, the standard "is even a little more demanding," as the defendant must show that the officer omitted the information deliberately or

(continued...)

8

regarding a firearm. Using that information, the officer prepared a complaint in support of a search warrant very similar to the one in the present case. *Id*. at 914. The police officer omitted from the complaint that the confidential informant had (1) been arrested the day before; (2) agreed to cooperate with the police; (3) a criminal background and gang affiliations; and (4) previously given false information to the police. *Id*. at 912, 916–17. The officer in *Simmons* knew information about the informant's checkered past that he did not reveal and, in the court's judgment, the information was (objectively) critical to the issuing judge's probable cause determination. *Id*. at 920–22. Unlike the officer in *Simmons*, Officer O'Connor presented the informant's criminal background and had no information that Doe had been unreliable in the past.[8] As such this court does not infer that Officer O'Connor failed to disclose objectively critical information.

Moreover, the court in *Simmons* had no information that, as Judge Chevere testified, the issuing judge had assumed that a John Doe is a cooperating arrestee hoping for leniency. *See, e.g.*, *Molina* v. *Cooper*, 325 F.3d 963, 970 (7th Cir. 2003) ("[C]ourts are aware that informants are frequently facing charges and hoping for deals.") *United States* v. *Thompson*, 139 F. App'x 724, 732 (7th Cir. 2005) ("[T]he fact that [the informant] was facing charges and hoping for a

---

[7](...continued)
recklessly to mislead the issuing judge. *McMurtrey*, 704 F.3d at 511 n.5, 513. The court in *Simmons* did not analyze omissions under the framework espoused by *McMurtrey*, namely whether the omissions were "designed to mislead or [were] made in reckless disregard of whether [they] would mislead." *McMurtrey*, 704 F.3d at 511 n.5. Still, even had the court in *Simmons* employed the *McMurtrey* analysis, the result would have been the same. *See McMurtrey*, 704 F.3d at 513 (noting that the court in *Simmons* found that the omissions were intended to mislead).

[8] That Officer O'Connor might have obtained more information for the complaint (such as doing further investigation to verify White's address and showing Doe a photo spread instead of a single picture of White) is less indicative of bad faith than is failing to reveal negative information one actually knows (as in *Simmons*).

9

deal would not surprise the judge or be likely to upset his probable cause finding since informants are often facing charges and hoping for deals." (internal quotation marks and citation omitted)); *United States* v. *Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002) ("[M]agistrate judges . . . often know, even without an explicit discussion of criminal history, that many confidential informants suffer from generally unsavory character and may only be assisting police to avoid prosecution for their own crimes."); *United States* v. *Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999) ("[C]ourts issuing search warrants are aware of the possibility that a confidential informant may be seeking leniency in his or her own situation."). Although Officer O'Connor did not testify that he also made that assumption, the evidence does not suggest that Officer O'Connor was trying to hide inconvenient facts. Accordingly, White has failed to carry his burden under the first prong of the *Franks* test and thus cannot establish a *Franks* violation.

**ORDER**

White's motion to suppress is denied.

ENTER:

Dated: June 25, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge